WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ken Krieger, et al.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>Peoria, City of, et al.,<br><br>　　　　　　Defendants. | No. CV-14-01762-PHX-DGC<br><br>**TEMPORARY RESTRAINING ORDER** |

Plaintiffs have filed a motion for a temporary restraining order ("TRO") and a preliminary injunction. Doc. 12. Defendants have filed a joint response (Doc. 27) and Plaintiffs have replied (Doc. 32). The Court heard oral argument on August 22, 2014. For the reasons that follow, the Court will grant the motion and enter a TRO.

**I.　Background.**

Plaintiffs are Dr. Ken Krieger and "Dr. Ken Krieger for Peoria City Council," a political committee. There are several defendants: the City of Peoria; Peoria Mayor Bob Barrett, in his official capacity; Peoria City Council members Tony Rivero, Carlo Leone, Ron Aames, Jon Edwards, Ben Toma, and Bill Patena, in their official capacities; Peoria City Clerk Rhonda Geriminsky, in her official capacity; Maricopa County; Maricopa County Supervisors Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Marie Lopez, in their official capacities; Clerk of the Maricopa County Board of Supervisors Fran McCarroll, in her official capacity; Maricopa County Recorder Helen Purcell, in her official capacity; Maricopa County Elections Director Karen Osborne, in her official capacity; the Election and Tally Boards for the Mesquite District in the City

of Peoria; the State of Arizona; Ben Toma, in his individual capacity; and Bridget Binsbacher.

This case concerns an election for a seat on the Peoria City Council representing Peoria's Mesquite District. The Mesquite District seat became vacant when its previous occupant resigned to run for Mayor of Peoria. Doc. 27 at 3. There are three candidates – Plaintiff Krieger, Defendant Toma, and Defendant Binsbacher. Toma is currently serving as the Mesquite District's interim council member. *Id.* at 4.

The Mesquite District primary election is scheduled to be held on August 26, 2014, in conjunction with state and federal elections. Early voting has already commenced. If a candidate receives at least "50% plus one" of the votes in the primary, he or she will immediately take office. *Id.* If not, a run-off would occur in November, with the winner taking office shortly thereafter. *Id.* There is no dispute that all three candidates properly qualified for the ballot.

Early voting ballots were mailed to registered voters in the Mesquite District on July 31, 2014 (the "First ballot"). Doc. 12 at 2. The following day, it was discovered that Krieger's name had been omitted from the ballot. *Id.* In an effort to correct the error, Defendants Purcell, Osborne, and Geriminsky decided to send replacement ballots, which were mailed on August 5, 2014 (the "Second ballot"). *Id.* Surprisingly, Krieger's name was omitted again. The parties agree that the vendor responsible for printing the ballots – not Defendants – is responsible for these errors.

The Peoria City Council held an emergency meeting on August 7, 2014, to find a solution. *Id.* at 3. The Council decided by a 3-2 vote, with Toma abstaining, that a new ballot would be mailed to *all* registered voters in the Mesquite District (the "Third ballot"), that remote voting stations would be set up to accept Third ballots or allow voters to cast Third ballots, and that votes cast for the Mesquite District race on the First or Second ballots would be counted unless the voter also submitted a Third ballot. *Id.* The Third ballots were mailed to registered voters on August 9, 2014, along with this notice:

> The enclosed replacement ballot includes a list of all candidates for the City of Peoria Special Primary Election for the Mesquite District Council seat only. If you have previously received a ballot, you may use that ballot to vote for all offices except the Mesquite District Council seat. Please use the enclosed ballot to vote for the Mesquite District council seat. If you have already voted in the Mesquite District Council Election and do not return this ballot, your prior vote will be counted. If you have not already voted an early ballot, you may vote a full ballot (State, County, and City items) at your designated polling place on Election Day. Replacement Voting Centers will be open through August 26th to vote only for the Mesquite District Council seat.

Doc. 27-2 at 8.

Defendants state that if voters return either the First or Second ballots, the last one received will be counted. Doc. 27 at 5. If a voter returns a Third ballot by mail, casts a Third ballot at a remote voting location, or casts a full ballot at the polls on Election Day, that vote will be counted for the Mesquite District election rather than any vote indicated on a previously received ballot. *Id.*

Following the Council's decision, Plaintiffs filed this action asserting claims under 42 U.S.C. § 1983 for denial of equal protection and due process under the Fourteenth Amendment to the United States Constitution, and denial of freedom to associate under the First Amendment. They also assert claims for violation of Arizona's early voting and ballot preparation statutes and violation of Peoria's ballot preparation law. Doc. 15. Plaintiffs ask the Court to enjoin the Mesquite District primary election and order that a special election be held.

## II.     Standing.

To establish standing, a plaintiff generally must show three elements: (1) the plaintiff has suffered an "injury in fact," (2) a causal connection exists between the injury and the conduct complained of, and (3) there is a likelihood the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Defendants dispute only the first element, arguing that Plaintiffs have not suffered injury

in fact. The Court disagrees. There can be little doubt that Plaintiff Krieger, a candidate, will be injured by an election process in which a meaningful number of votes are cast on ballots that do not include his name.

Plaintiff Krieger also asserts his rights as a voter and the associated rights of other voters in the Mesquite District. The Supreme Court has held that "[a] citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution," *Baker v. Carr*, 369 U.S. 186, 207-08 (1962); *see also Gray v. Sanders*, 372 U.S. 368, 375 (1963), and a loss of a constitutional right constitutes actual injury. In addition, Courts have recognized the standing of candidates to bring an action on behalf of affected voters:

> [W]e believe that both candidates and voters may challenge on its face on equal protection grounds a candidacy restriction because of its impact on voting rights. A candidate for public office, such as the appellee, is so closely related to and dependent upon those who wish to vote for him and his litigation will so vitally affect their rights that courts will relax the rule of practice (which is designed to assure vibrant representation of the vital interests of non-parties) and will permit a candidate to raise the constitutional rights of voters.

*Mancuso v. Taft*, 476 F.2d 197, 190 (1st Cir. 1973); *see also Bullock v. Carter*, 405 U.S. 134 (1972).

Plaintiffs have shown a sufficient injury in fact on behalf of Plaintiff Krieger and voters whose constitutional rights Plaintiffs may raise in this case.

**IV.    TRO Requirements.**

An injunction may be granted only where the movant shows that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A request for a TRO is governed by the same general standards that govern the

- 4 -

issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1347 n.2 (1977).

### A.  Likelihood of Success on the Merits.

Plaintiffs assert several different constitutional violations in their § 1983 claims: violation of procedural and substantive due process, denial of equal protection, and violation of the First Amendment right of association as expressed through the voting process. Courts have applied several different tests to constitutional claims arising out of elections. During the hearing in this case, both sides agreed that the "fundamental unfairness" test applied by the Ninth Circuit in *Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998), is most relevant.

*Bennett* held that "an election is a denial of substantive due process if it is conducted in a manner that is fundamentally unfair." *Id*. at 1226. The Ninth Circuit explained, however, that there is a distinction "between 'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote." *Id.* "In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election." *Id.* To trigger a constitutional violation, the irregularities must "transcend garden variety problems." *Id.*

*Bennett* cited several cases that illustrate garden variety irregularities. *Id.* These include human error in miscounting votes, delays in the arrival of voting machines, technical deficiencies in printing ballots, and malfunctioning voting machines. The cited cases hold that such common irregularities should be resolved through state-law remedies and do not amount to a violation of constitutionally protected rights. The cases rightly recognize that federal courts should be reluctant to intervene in state election procedures.

To illustrate election problems that warrant federal intervention, the Ninth Circuit relied on *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978).[1] Absentee and shut-in voters in *Griffin* were allowed to use mail-in ballots, as in this case, to vote in a primary election

---

[1] The Ninth Circuit also relied on *Roe v. Alabama*, 43 F.3d 574 (11th Cir. 1995), a case consistent with *Griffin*.

for a city council seat. After the election, the Rhode Island Supreme Court found "no constitutional or statutory basis for allowing absentee and shut-in voters to cast their votes in a primary election," and invalidated the ballots. *Id.* at 1068. Disenfranchised voters sued in federal court, arguing that their constitutional rights had been violated.

The First Circuit applied the "fundamental unfairness" analysis adopted by the Ninth Circuit in *Bennett* and accepted by the parties in this case. Several observations in *Griffin* are relevant.

The First Circuit began by confirming that "the plaintiffs' right to vote in this primary as in other elections is protected under the Constitution." *Id.* at 1074. *Griffin* recognized that federal courts should not intervene in common election irregularities, but that some cases do require the protection of federal rights:

> The right to vote remains, at bottom, a federally protected right. If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order. . . . [T]here is precedent for federal relief where broad-gauged unfairness permeates an election, even if derived from apparently neutral action.

*Id.* at 1077.

During the hearing in this case, the Court asked the parties to identify the dividing line between garden variety irregularities and those that raise serious constitutional violations. Defendants asserted that a finding of intentional discrimination or other wrongful intent is needed before election problems violate constitutional rights. Plaintiffs argued that wrongful intent is not required and that fundamental unfairness is sufficient. The Court agrees with Plaintiffs. As noted in the above quotation from *Griffin*, broad-gauged fundamental unfairness violates the constitution even it results from "apparently neutral action" on the part of state or local officials. *Id.* This certainly was true in *Griffin*, where the unconstitutional action was a decision by the Rhode Island Supreme Court. *Bennett* likewise contains no suggestion that wrongful intent is required before a constitutional violation can be found.

- 6 -

After discussing two cases in which federal courts rightly intervened in local elections, *Griffin* provides this helpful guidance on the dividing line:

> While there is no single bright line to distinguish [the two cases] from the cases . . . in which federal courts have declined to intervene, it is apparent that in both cases *the attack was, broadly, upon the fairness of the official terms and procedures under which the election was conducted*. The federal courts were not asked to count and validate ballots and enter into the details of the administration of the election. Rather they were confronted with *an officially-sponsored election procedure which, in its basic aspect, was flawed*. Due process, representing a profound attitude of fairness between . . . individual and government, is implicated in such a situation.

*Id*. at 1078 (emphasis added; citations and quotation marks omitted).

Applying this requirement of broad, fundamental unfairness, which was adopted by the Ninth Circuit in *Bennett*, the Court concludes that Plaintiffs have shown a likelihood of success on the merits of their constitutional claims. Plaintiffs do not base their claim on the two misprinted ballots that were mailed to voters. Those errors were unintended irregularities. Plaintiffs instead complain about the official action taken by Defendants to remedy those errors, actions that, although clearly undertaken in good faith, produced fundamental unfairness.

Defendants decided that votes cast on either the First or Second ballots would be counted, despite the fact that both ballots omit Krieger's name. Under that decision, some portion of the voters will make choices in the primary election with only the names of Krieger's two opponents before them. Unfortunately, this prospect is not eliminated by the remedial measures Defendants adopted.

The instruction included with the Third ballot and quoted earlier in this order is, at best, confusing. It tells voters that they are to use the Third ballot for their votes for the Mesquite District council seat, but does not say why. It says nothing about the error in the earlier ballots voters have received. The notice then tells voters that their votes on the First and Second ballots will be counted, contradicting the statement that the Third ballot must be used.

1 Voters who have already mailed in the First or Second ballots may not even bother 2 to open or read the third mailing.  Others may read it, see that their earlier mail-in vote 3 will be counted, and not bother to examine the Third ballot to see how it differs from the 4 first two.  Nor could they compare the new ballot to the earlier versions which they have 5 already mailed.  What's more, the Third ballot was mailed and the election will be held in 6 August which is prime vacation time in the desert, and some voters who mailed in earlier 7 ballots therefore may not even see the third mailing before the election.  The Court finds 8 each of these scenarios plausible, even likely for at least some of the voters.  In every one 9 of them, voters will cast their votes on the basis of an incomplete list of candidates and 10 Plaintiff Krieger will lose his right to be considered for their votes.

11 This fundamental unfairness is more than isolated.  Statistics provided by Defendants show that half of the registered voters in the Mesquite District receive early ballots by mail.  Of the votes cast in the 2012 election, 86% were cast by mail-in ballots, 14% at polling places.  Doc. 27 at 17.  Thus, the defective ballots in this case were mailed to approximately one-half of the voters, and the vast majority of the votes in this election are likely to come from mail-in ballots.  Although Defendants have taken steps to provide voters with a correct ballot, it was not mailed out until August 9, and defense counsel acknowledged during the hearing that Defendants began receiving completed mail-in ballots on August 1.  Thus, it is a certainty that some votes have been cast using the defective ballots.  Because Defendants have decided to count votes cast on the First and Second ballots, it appears likely that some significant percentage of the votes for the Mesquite District council seat will have been made with ballots that omit Plaintiff Krieger's name.

24 This procedure, like the procedure struck down in *Griffin*, reflects "broadly upon the fairness of the official terms and procedures under which the election [is] conducted." *Griffin*, 570 F.2d at 1078.  It is "an officially-sponsored election procedure which, in its basic aspect, [is] flawed." *Id.*  To use the Ninth Circuit's words, it includes "a pervasive error that undermines the integrity of the vote." *Bennett*, 140 F.3d at 1226.

Because the Court finds an election based in part on incomplete ballots that omit a candidate's name to be fundamentally unfair, the Court concludes that it likely violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment. Plaintiffs are likely to succeed on the merits of this claim.

The Court wishes to emphasize that it finds absolutely no wrongdoing on the part of Defendants. They have acted in good faith to remedy a problem not of their making. But the Court also finds that the selected remedy is fundamentally flawed.

### B.  Likelihood of Irreparable Harm.

Plaintiffs are likely to succeed in showing irreparable harm. Plaintiffs do not assert their right to win the election; they assert their right to a fair election and the voters' right to cast an accurate and valid vote. The loss of these rights satisfies the irreparable harm requirement. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (election case noting that the loss of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073 (N.D. Fla. 2004) ("A person who is denied the right to vote suffers irreparable injury.").

### C.  Balance of Equities and Public Interest.

The last two requirements for a TRO are also satisfied. The balance of equities tips in favor of Plaintiffs, who are likely to suffer a serious violation of their constitutional rights, not in favor of Defendants, who seek to implement an election procedure that is fundamentally unfair. Similarly, an injunction of the unfair election is in the public interest, which is not served by an election based in part on defective ballots.

### V.  Temporary Restraining Order.

Plaintiffs ask the Court to enjoin Defendants from counting votes cast for the Mesquite District council seat in the ongoing primary election and to order a special election. The Court has considered whether lesser measures would solve the problem in this case, but has found none that is viable. One possible solution would be to order Defendants not to count votes on the First and Second ballots, but such an order would


effectively disenfranchise voters who relied on the statement in the third mailing that their votes on those ballots would be counted. It is entirely possible that some voters read the third mailing with care, understood the problem in the first two ballots, and chose not to send in the Third ballot or vote at a polling place because they wanted to cast their vote for Toma or Binsbacher and relied on the assurance that such a vote on the First and Second ballots would be counted. Invalidating their votes is not a fair solution. In the absence of any other reasonable alternative, the Court concludes that Plaintiffs' requested relief should be granted.

**IT IS ORDERED:**

1. Defendants shall not count votes cast in the Mesquite District primary election for the Peoria City Council, whether cast by mail-in ballot or at any polling place, in connection with the August 26, 2014 primary election, nor shall they announce any result related to the Mesquite District primary election for the Peoria City Council.

2. Defendants shall instead hold a special election for the Mesquite District primary election for the Peoria City Council. Defendants shall, within ten days of this order and after conferring with Plaintiffs and Candidates Toma and Binsbacher, advise the Court concerning the details of the special election.

3. The parties shall, by 3:00 p.m. on August 29, 2014, jointly file a statement advising the Court of any further proceedings they believe to be necessary in this case.

4. No bond shall be required of Plaintiffs for entry of this TRO.

Dated this 22nd day of August, 2014.

_____
David G. Campbell
United States District Judge